1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8          **EASTERN DISTRICT OF CALIFORNIA**
9
10

11  GLENN SCHULER,                                )   Case No.: 1:18-cv-0884-BAM
12          Plaintiff,                            )   **ORDER REGARDING PLAINTIFF'S**
                                                  )   **SOCIAL SECURITY COMPLAINT**
13          v.                                    )
                                                  )
14  ANDREW M. SAUL,[1] Commissioner of            )
    Social Security,                              )
15                                                )
                                                  )
16          Defendant.                            )
                                                  )
17  _____      )

18                      <u>**INTRODUCTION**</u>

19          Plaintiff Glenn Schuler ("Plaintiff"), appearing *pro se*, seeks judicial review of a final decision

20  of the Commissioner of Social Security ("Commissioner") denying his application for disability

21  insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security

22  income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on

23  the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

24  McAuliffe.[2]

25  _____

26  [1]       Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil
    Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
27
28  [2]       The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).
    (Doc. Nos. 11, 18.)

                                                1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On April 8, 2013, Plaintiff filed an application for a period of disability and DBI. AR 190-196.[3] Plaintiff also filed an application for SSI on April 10, 2013. AR 197-223. In both applications, Plaintiff alleged disability beginning September 1, 2011. AR 190, 197. Plaintiff's applications were denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an ALJ. AR 132-147. ALJ William Mueller held a hearing on April 20, 2015, and issued an order denying benefits on May 28, 2015. AR 35-81. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied on November 17, 2016, making the ALJ's decision the Commissioner's final decision. AR 21-26.

On January 19, 2017, Plaintiff requested an extension of time to file a civil action, which the Appeals Council granted on April 27, 2017. AR 16-17. On October 24, 2017, Plaintiff requested that his claim be reopened because Plaintiff had not received notification that his original request for review had been denied. AR 6. Plaintiff also requested permission to submit additional statements or an extension of thirty (30) days to file a civil action. AR 6. On December 29, 2017, Plaintiff requested a new extension of time to file a civil action because Plaintiff had not received the Appeals Council's April 27, 2017 letter. AR 4. On May 24, 2018, the Appeals Council declined to reopen Plaintiff's claims and granted a further extension of time for Plaintiff to file a civil action. AR 12-13. This appeal followed.

### Relevant Hearing Testimony

The ALJ held a hearing on April 20, 2015, in San Diego, California. Plaintiff was present and represented by his attorney, Randilyn Nordstrom. Impartial Vocational Expert ("VE") Connie Guillory also appeared. AR 51-54.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

In response to questioning by the ALJ, Plaintiff testified that he was forty-three and was not working at the time of the hearing. AR 55. Plaintiff last worked in September of 2011. AR 55. Plaintiff claimed he filed an application for disability in March of 2000 that was lost and had also filed for food stamps and Medicaid. AR 56. Plaintiff determined his date of disability by reviewing his bank records and determining that he last received a check from a client in August of 2011. AR 56-57.

When asked about his work history, Plaintiff testified that he most recently worked as a physical fitness training and life coach and was self-employed. AR 57. From 1991 to 2007, Plaintiff was a graphic designer. AR 58. In 2003, Plaintiff lost his employment due to a disagreement with his employer regarding his pay but he found a new employer in 2004. AR 59-60. From 2007 to 2008, Plaintiff worked as a mortgage broker. AR 61-62. Plaintiff lost his employment in 2009 and began having "issues" with his arms, causing him to seek employment that he could do standing up. AR 62. In approximately 2010, Plaintiff began training for his physical fitness life coaching job but did not earn any income. AR 62-63. In 2011, Plaintiff began his physical fitness training and life coaching job. AR 63-64. Plaintiff testified that he had difficulty performing his work and could only see one or two clients per week due to increased pain in his back and hips. AR 64-65.

Plaintiff testified that he has been diagnosed with severe degenerative disc disease, myofascial pain syndrome, and insomnia. AR 65. He knows how to read and write and graduated from high school. AR 65. Plaintiff has a driver's license but cannot currently drive because the pain clinic where he was being seen had not prescribed his medication since the previous month. AR 65. Plaintiff can drive for short periods if he takes his pain medication but if he is in pain he has difficulty concentrating and must lie down. AR 66. Plaintiff was driven to the hearing by a friend and was mostly lying down with the front seat reclined while the friend drove. AR 66.

When asked about his daily activities, Plaintiff testified that he lives with friends and has his own room. AR 67. He tries to keep it organized but needs assistance changing the sheets. AR 67. Plaintiff can use the microwave and, when he is on pain medication, can cook eggs. AR 67. He can dress himself and feed himself by using his left hand in a lying back position. AR 68. He has difficulty brushing his teeth and taking showers but can go to the bathroom. AR 69. Plaintiff spends most of his time listening audio books and does some yoga along with his physical therapy routine, which he

3

times to correspond with the limited windows of time when he feels well after taking his medication. AR 70. Plaintiff testified that he had a microdiscectomy in 1999 or 2000 but has not had any other surgeries. AR 71.

When questioned by his attorney, Plaintiff testified that he previously had trigger point injections that did not help him and instead made his pain far worse and caused spasms in his back. AR 72. Plaintiff has been using a cane for approximately two and a half years to support his hip and take pressure off the top part of his body. AR 72. Plaintiff is 6'1" and weighs 125 pounds and testified that he has lost weight in recent years because of lack of appetite and difficulty preparing meals. AR 72-73.

Plaintiff testified that his pain radiates and causes both of his hands to go numb. AR 73. If he does not lie down, his right hand will lose motor function and his arm will twitch. AR 73. He estimates that he can lift five to ten pounds with his right arm. AR 73. Plaintiff can typically be in a standing position for five minutes before needing to sit down, although he can stand for ten to fifteen minutes if needed. AR 74. He only gets out of the house for doctor's appointments once a week. AR 74. Plaintiff had an MRI in 2012 and two of his doctors are requesting additional MRIs, but he has had problems obtaining them due to his insurance. AR 74-75. He has difficulty concentrating due to pain, which improves when he takes pain medication. AR 75. However, the pain medication causes side effects and makes it difficult for Plaintiff to think. AR 75.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE Connie Guillory. The VE testified that Plaintiff's work as a graphic designer would be classified as sedentary and skilled with a Specific Vocational Preparation of 7. AR 77. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual similar to Plaintiff in age, education and work experience that is limited to sedentary work such as graphic design, could stand or walk for six out of eight hours and could not lift more than ten pounds. AR 77. The VE testified that this individual could perform work as a graphic designer and there would be other work as well but there would not be transferrable skills. AR 77. The hypothetical individual could perform work as an usher, ticket taker, or information clerk, and the VE applied an erosion factor of twenty-five to thirty percent. AR 78.

4

The ALJ then asked the VE if there were positions available that are sedentary where an individual could alternate between sitting and standing. AR 78. The VE responded that it depended on a person's ability to use his or her hands, but examples included a ticket clerk with erosion of fifty to sixty percent, a finisher with erosion of seventy-five percent, or an inspector with erosion of seventy-five percent. AR 79.

For the next hypothetical, the ALJ asked the VE to assume an individual similar to Plaintiff in age, education, and work experience that could neither sit nor stand for six out of eight hours but could only crouch. AR 79. The VE testified that there would be no jobs available. AR 79. The VE further testified that her testimony was consistent with the Dictionary of Occupational Titles, with the exception of the erosion factors which were based on information from OSHA, the Department of Labor, Census bureau, the VE's experience performing job analysis ergonomic evaluations, and professional journal publications. AR 79-80.

Finally, Plaintiff's attorney asked the VE whether there would be further erosion of available jobs if the individual in the first hypothetical had to use a cane for all ambulation. AR 80. The VE testified that the individual would be restricted to sedentary positions. AR 80.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 35-50. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014 and had not engaged in any substantial gainful activity since September 1, 2011, his alleged onset date. AR 40. Further, the ALJ identified lumbar and cervical spine degenerative disc disease as severe impairments. AR 40. However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 40-41. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except Plaintiff retains the

capacity to stand for six hours in an eight-hour workday and lift up to ten pounds. AR 41-44. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 44-45. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 46.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

1990).

## DISCUSSION[4]

Liberally construed, Plaintiff raises the following challenges to the ALJ's decision in his opening brief: (1) there is new evidence which warrants remand; (2) the ALJ erred in determining that Plaintiff's insomnia was not a severe impairment; (3) the ALJ erred in finding that Plaintiff did not require a cane to ambulate; (4) the ALJ erred in failing to consider the side effects of Plaintiff's medications; (5) the ALJ erred in evaluating Plaintiff's credibility; (6) the ALJ erred in evaluating the medical opinion evidence; and (7) the Commissioner has altered and lost evidence and otherwise engaged in bad faith conduct. (Doc. No. 21.)[5]

### 1.    Plaintiffs' New Evidence is Insufficient to Warrant Remand

Subsequent to his hearing, Plaintiff obtained a letter from Kekoa C. Ede, MD, dated July 1, 2015, a letter from Margaret Chen, MD, dated July 6, 2015, an RFC questionnaire from Bill McCarberg, MD, dated June 30, 2016, and results of electromyography and nerve conduction velocity testing performed by Shafi Khalid, MD, on May 21, 2015. (Doc. No. 21 at 12.) Plaintiff contends that the Appeals Council should have found that this evidence was new and material and should have remanded the case with instructions to reconsider his impairments and RFC. (*Id.*) The Commissioner argues that the ALJ's decision continued to be supported by substantial evidence in light of the evidence submitted to the Appeals Council. (Doc. No. 22 at 14-15.) Moreover, Dr. McCarberg's opinion is extra-record evidence that was not presented to the Appeals Council and does not constitute new and material evidence warranting remand. (*Id.* at 15-18.)[6]

---

[4]    The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[5]    Notably, Plaintiff requests that the Court to reverse the Appeals Council or find error with its decision in the course of several of the arguments raised in Plaintiff's briefing. (*See* Doc. No. 21 at 12-21.) Because the Court lacks jurisdiction to review the Appeals Council's decisions as discussed further below, these arguments are construed as requests for review of the ALJ's decision wherever possible. *See Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1162 (9th Cir. 2012) ("[W]e do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.")

[6]    The Commissioner's briefing does not address the testing performed by Dr. Khalid.

7

Drs. Ede and Chen

According to the record, Plaintiff submitted the July 1, 2015 letter from Dr. Ede and the July 6, 2015 letter from Dr. Chen to the Appeals Council as part of his request for review of the ALJ's decision. AR 25, 28-30, 608. In denying review on November 17, 2016, the Appeals Council noted that it considered the July 2015 letters from Drs. Ede and Chen, as well as a representative brief dated September 17, 2015. AR 24. The Appeals Council considered whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record" and "found that this information does not provide a basis for changing the [ALJ's] decision." AR 22.

Social Security regulations permit claimants to submit new and material evidence to the Appeals Council, which it must consider in determining whether to review the ALJ's decision. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). If new and material evidence is submitted after the ALJ's decision, the Appeals Council shall consider such evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 404.970(b). The Appeals Council will overturn an ALJ's decision only when it determines, after a review of the entire record, including the new and material evidence, that the decision is contrary to the weight of the evidence. *Id.*

In the Ninth Circuit, where a claimant has submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, the district court may consider the new evidence in determining whether the ALJ's decision is supported by substantial evidence "because the Appeals Council addressed them in the context of denying [the claimant's] request for review." *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000) (*citing Ramirez v. Shalala,* 8 F.3d 1449 (9th Cir. 1993)); *see also Brewes*, 682 F.3d at 1163 (holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). However, courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes*, 682 F.3d at 1161. "When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner...and the district court reviews that

decision for substantial evidence, based on the record as a whole." *Id.* at 1161–62 (citation and quotation marks omitted). While the Court considers the evidence submitted to the Appeals Council in conjunction with the rest of the record in reviewing the ALJ's decision, "the Court cannot remand based solely on the actions of the Appeals Council[.]" *Berschneider v. Colvin*, 2015 WL 1497835, at *9 (E.D. Cal. Mar. 31, 2015).

Plaintiff's argument that this case should be remanded to the ALJ so that he may consider the new evidence from Drs. Ede and Chen is misplaced. The Appeals Council has already considered this evidence and found that it does not provide a basis for changing the ALJ's decision. AR 22. "The Appeals Council is not required to provide a 'detailed rationale' or make any particularized evidentiary showing as to why it rejected a post hearing opinion." *Moreno v. Colvin,* 2015 WL 966090, at *4 (E.D. Cal. Mar. 4, 2015) (citing *Taylor v. Comm. of Soc. Sec. Admin.,* 659 F.3d 1228, 1233 (9th Cir. 2011); *Warner v. Astrue,* 859 F.Supp.2d 1107, 1115 (C.D. Cal. 2012); *Crater v. Astrue,* 2012 WL 3106625, *5 (C.D. Cal. July 30, 2012)). The issue before this Court is not whether the Appeals Council should have remanded the case to the ALJ with instructions to consider Drs. Ede and Chen's opinions, but rather whether the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in light of the post-hearing medical reports. Accordingly, the Court considers this evidence in reviewing the administrative record. *Lopez v. Colvin,* 2015 WL 1469035, at *5 n. 3 (E.D. Cal. Mar. 30, 2015). However, a review of the record reveals that Drs. Ede and Chen's July 2015 letters do not undermine the ALJ's decision.

Dr. Ede's July 1, 2015 letter states that Plaintiff "has been a behavioral health patient of [Dr. Ede] since 5/23/12." AR 608. Dr. Ede sees Plaintiff "for chronic insomnia" but "his foremost complaints have been of chronic pain." *Id.* Dr. Ede describes Plaintiff's reports of his pain as well as treatment he has received from other medical professionals. *Id.* According to Dr. Ede, "[o]ver the past several years, he has crouched or laid down in the office while talking to me to try and relieve his pain." *Id.* Dr. Ede also reports that Plaintiff has "chronic insomnia and has required high doses of medications to help with sleep. *Id.* "[Plaintiff's] sleep pattern is unique in that he times his sleep around doses of the pain medication as otherwise he feels that he can't sleep due to back pain." *Id.* Dr. Ede then opines that, "[d]ue to the above reasons, I do not feel that [Plaintiff] would be able to work in

any field for at least a year." *Id.*

Dr. Ede bases his opinions regarding Plaintiff's functional limitations on Plaintiff's subjective complaints of chronic pain, his diagnosis of myofascial pain from another provider, and a lumbosacral x-ray in April of 2012 showing severe degenerative disc disease at the L5-S1 level. AR 608. However, the ALJ considered Plaintiff's subjective complaints and found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 41-44. The ALJ also considered the objective medical evidence Dr. Ede cites in developing Plaintiff's RFC. *See* AR 42. Moreover, Dr. Ede does not explain how this evidence supports his conclusion that Plaintiff is unable to work in any field for at least a year. *See Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ") (citing 20 C.F.R. § 416.927). With respect to Plaintiff's insomnia, as the ALJ noted in his finding that this impairment was non-severe, Dr. Ede's own treatment notes do not indicate any visible fatigue and routinely state that Plaintiff was observed to be in no acute distress. AR 426, 428, 432, 435, 441, 443-444, 447, 450, 453, 457, 462, 481, 484, 487, 490, 494, 498, 502, 509, 513, 517, 521, 524, 528, 531, 534, 542, 545, 547, 550, 553. Further, treatment notes indicate that Plaintiff's insomnia has improved with medication, which Dr. Ede's July 2015 letter acknowledges by stating that high doses of medication help Plaintiff with sleep. AR 425, 428, 431, 437, 440, 446, 455, 457, 459, 608.

Dr. Chen's July 6, 2015 opinion provides, in turn, that Plaintiff "has conditions such as myofascial pain, lumbar disk disease and chronic pain syndrome." AR 608. Dr. Chen reports that she first saw Plaintiff in December 2012 and Plaintiff has been to several doctors and other practitioners. *Id.* Dr. Chen states that Plaintiff's condition has not improved, he has been losing weight, and he is not able to take care of himself. *Id.* Furthermore, Plaintiff is not able to stand more than two hours at a time, is unable to do any heavy lifting, and his prognosis is poor. *Id.*

Dr. Chen's July 2015 letter likewise does not adequately explain how Plaintiff's condition precludes him from working. AR 608. Dr. Chen does not identify any objective medical evidence or any other bases for her opinions that Plaintiff cannot do any heavy lifting and cannot stand more than two hours at a time. *Lambert v. Saul*, 2019 WL 4688636, at *6–7 (E.D. Cal. Sept. 26, 2019) (finding

that a note from a physician that a plaintiff "could not 'walk or ambulate for 3 hours'" submitted for the first time to the Appeals Council did not undermine the ALJ's decision where it was "not supported by any explanation."). Furthermore, it is unclear what Dr. Chen intends by the term "heavy lifting" in the context of Plaintiff's functioning. There also does not appear to be any support in the medical record for the limitations set forth in Dr. Chen's letter. At best, Dr. Chen's letter appears to indicate that Plaintiff's symptoms have not improved, and he has "poor prognosis" in an equivocal and unqualified sense.

The opinions set forth in Drs. Ede and Chen's July 2015 letters are conclusory and lack detail regarding Plaintiff's functional abilities and how Plaintiff's condition prevents him from working. These letters are primarily a recitation of Plaintiff's subjective complaints and past medical history. Both letters are contradicted by the opinions of State Agency medical consultants R. Masters, M.D. and S. Lee, M.D., and of consultative examiner B. Thomas, D.O., all of whom opined that Plaintiff's functional limitations were less restrictive than those opined by Drs. Ede and Chen. They are further unsupported by treatment notes and inconsistent with the medical record as a whole. Accordingly, Drs. Ede and Chen's July 2015 letters do not rise to a degree of probative value such that, in light of them, substantial evidence no longer supports the ALJ's findings. *Hill v. Astrue*, 2012 WL 4090171, at *15 (E.D. Cal. Sept. 17, 2012); *Ortiz v. Comm'r of Soc. Sec.*, 2015 WL 925591, at *4 (E.D. Cal. Feb. 27, 2015). While the July 2015 letters are relevant and material to the extent the Appeals Council included them in the record, the ALJ's findings are nonetheless supported by substantial evidence when this evidence is considered in the context of the entire record.

### Drs. McCarberg, and Khalid

Although Plaintiff claims that Dr. McCarberg's June 30, 2016 RFC questionnaire and the May 21, 2015 electromyography and nerve conduction velocity testing performed by Dr. Khalid were submitted to the Appeals Council, they are not identified in the materials the Appeals Council considered in denying Plaintiff's requests for review. AR 24. The Appeals Council's May 24, 2018 denial of Plaintiff's request that his claim be reopened likewise does not reference this evidence, and they are not identified in any of the correspondence between Plaintiff's counsel and the Appeals Council. AR 2-19. Plaintiff contends that the Commissioner "lost" this evidence but has not provided

any support for this assertion as discussed further below.

In this situation, Plaintiff is asking the Court to review new evidence that was not submitted during the administrative proceedings. The submission of new evidence to the trial court is governed by 42 U.S.C. § 405(g) which requires the claimant to show that the new evidence is material and there was good cause for the failure to incorporate the evidence into the record in the prior proceeding. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

"To be material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Further, new evidence requires remand "only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz*, 734 F.2d at 1380 (quoting *Dorsey v. Heckler*, 702 F.2d 597, 604–605 (5th Cir. 1983)). Good cause is established where the material was unavailable earlier. *Mayes,* 276 F.3d at 463.

Here, the May 21, 2015 electromyography and nerve conduction velocity testing performed by Dr. Khalid states that all nerve conduction studies were within normal limits and all F Wave latencies were within normal limits. (Doc. No. 21 at Ex. 1A.) Needle evaluation of the right tibilias anterior, right peroneous long, left tibialis anterior, and left peroneous long showed increased motor unit amplitude. (*Id.*) All remaining muscles showed no evidence of electrical instability. (*Id.*)

Dr. McCarberg's June 30, 2015 RFC questionnaire opines, in relevant part, that Plaintiff can walk for less than one block, sit for a maximum of five minutes at a time, stand for a maximum of five minutes at a time, and sit and stand/walk a total of less than two hours in an eight-hour work day with normal breaks. (Doc. No. 21 at Ex. 1A.) Plaintiff needs to walk around for four minutes at a time every thirty minutes in an eight-hour work day. (*Id.*) He could rarely lift less than ten pounds and never lift ten pounds or more. (*Id.*) Plaintiff could rarely twist or climb stairs and could never stoop, bend, crouch, squat, or climb ladders. (*Id.*) Dr. McCarberg listed Plaintiff's diagnoses as fibromyalgia and degenerative disc disease, identified his prognosis as stable, and stated that the clinical findings and objective signs upon which his opinion was based included elevated blood pressure, multiple tender points, and widespread pain. (*Id.*)

As an initial matter, it is unlikely that Drs. Khalid and McCarberg's opinions would meet the materiality standard. Dr. Khalid's testing reveals some increased motor unit amplitude, but results were generally within normal limits. Dr. Khalid's report says nothing about Plaintiff's ability to work or engage in activities. Additionally, Dr. McCarberg's opinion regarding Plaintiff's RFC is inconsistent with his own treatment notes which state Plaintiff's pain and functioning improved with medication and he was able to ambulate, care for his own personal needs, clean around the house, shop, cook, and put food away. AR 395-412, 417-420, 477-482, 486-504, 508- 519, 523-526. Dr. McCarberg's opinion is also contradicted by every other medical opinion in the record, including those from Drs. Ede and Chen, all of which state that Plaintiff's functional limitations were significantly less restricted. See AR 82-92, 106-116, 388-394, 608

However, the question of whether the new evidence is material appears to be moot because Plaintiff has not established good cause for his failure to submit this evidence during the administrative proceedings. Plaintiff argues that the Appeals Council "lost" Dr. McCarberg's June 30, 2016 RFC questionnaire and the May 21, 2015 testing performed by Dr. Khalid. (Doc. No. 13 at 12.) However, there is nothing in the record indicating that these opinions were ever provided to the Appeals Council. Plaintiff does not identify when these documents were purportedly transmitted to the Appeals Council or provide any evidence that they were received.[7]

Plaintiff otherwise does not address whether there is good cause for the failure to present the new evidence in the administrative proceedings. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes,* 276 F.3d at 463. A claimant must also demonstrate good cause for failing to seek the expert's opinion earlier. *Id.* Here, Plaintiff fails to explain why he did not seek or could not have obtained this evidence earlier. Notably, Dr. McCarberg's RFC questionnaire states that he had been

---

[7]     Although the copies of Drs. Khalid and McCarberg's opinions attached to Plaintiff's brief contains a header indicating that these documents were faxed to someone on March 9, 2017, there is no cover page or provided, only pages four through eight of the transmission are included, and the sender and recipient are not identified. (*See* Doc. No. 21 at Ex. 1A.)

treating Plaintiff monthly since August of 2013. (Doc. No. 21 at Ex. 1A.) Although Drs. Khalid and McCarberg's reports were not prepared until May and June of 2015, respectively, Plaintiff was aware of the underlying issues at the time of the hearing and it instead appears that, when he was unsuccessful at the hearing, he sought opinions that might better support his claim. "The 'good cause' requirement would be meaningless if such circumstances were sufficient to allow introduction of new evidence." *Allen v. Sec'y of Health and Human Serv.*, 726 F.2d 1470, 1473 (9th Cir. 1984). Dr. Khalid's testing results and Dr. McCarberg's RFC questionnaire were therefore not "unavailable" in any meaningful sense at the time of the hearing; they simply did not yet exist because of Plaintiff's failure to obtain them. *Duncan v. Astrue*, 2012 WL 4433523, at *7–8 (E.D. Cal. Sept. 24, 2012). Accordingly, Plaintiff has not met his burden and the Court declines to consider this evidence.

### 2.      The ALJ Did Not Err in Evaluating Plaintiff's Insomnia

Plaintiff also argues that the ALJ should have found that his insomnia was a severe impairment. (Doc. No. 21 at 12.) The Commissioner, in turn, contends that the record does not established that Plaintiff's insomnia significantly limited any workplace activities and Plaintiff failed to meet his burden of establishing that this impairment was severe. (Doc. No. 22 at 7-8.) The Court agrees.

At step two of the Social Security Administration's five-step sequential evaluation process, the claimant must make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yucket*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for at least a consecutive twelve-month period. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 96–3p, 2018 WL 3461816 (June 14, 2018). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits his physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. *See id.* Indeed,

14

"[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993).

Here, the ALJ found that Plaintiff's insomnia caused "no more than minimal functional limitations, singly or in combinations with his other impairments" and was therefore non-severe. AR 40. The ALJ noted that progress notes diagnosed Plaintiff with insomnia but there was "little to no indication of visible fatigue and [Plaintiff] was routinely observed to be in no acute distress." (*Id.*)

In support of his argument that his insomnia is severe, Plaintiff cites to medical records from 2011 which indicate his medication was not working, Dr. Ede's July 2015 opinion that Plaintiff has "chronic insomnia and has required high doses of medications to help with sleep[,]" and Plaintiff's testimony that he has a cognitive impairment caused by his insomnia. (*Id.*) According to Plaintiff, the medical evidence indicates his insomnia significantly limits his ability to do work activities and the ALJ's finding that Plaintiff's insomnia is non-severe is conclusory. (*Id.*) Furthermore, Plaintiff contends that the ALJ's finding that the medical evidence demonstrated "little to no indication of visible fatigue and [Plaintiff] was routinely observed to be in no acute distress" was incorrect because "[a] major symptom of a severe sleep disorder like mine is that the less sleep I get, the less tired I am and the more difficult it is to sleep. Signs of fatigue may not be evident without testing cognitive and physical function." (*Id.* at 13.)

Plaintiff fails to prove that his insomnia is severe such that it significantly limits his ability to do basic work activities. Although Plaintiff was diagnosed with insomnia, this alone is insufficient to warrant a finding of a severe impairment at step two, as the mere existence of an impairment, or even multiple impairments, does not establish severity. *Matthews,* 10 F.3d at 680; *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)) ("[T]he claimant must show more than the mere presence of a condition or ailment."); *Holaday v. Colvin*, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."); *Mahan v. Colvin*, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment."). Plaintiff points to records from 2011 stating that his medication was not working, but Dr. Ede's July 2015 letter and treatment notes indicate that

15

Plaintiff's insomnia had improved and was being controlled with medication. AR 425, 428, 431, 437, 440, 446, 455, 457, 459, 608.

Likewise, Plaintiff's citation to his own testimony does not establish that his insomnia was severe as the ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms to not be entirely credible. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While Plaintiff argues that the ALJ's finding is conclusory, this argument is unavailing as the Court is able to reasonably discern the ALJ's path for the purpose of review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-494 (9th Cir. 2015). Plaintiff's argument that tests for "cognitive and physical function" would undermine the ALJ's findings is likewise unpersuasive as Plaintiff has the burden at step two to establish that his impairments are severe, and he did not submit any such testing. Consequently, the Court finds no error with the ALJ's conclusion that Plaintiff's insomnia is non-severe.

### 3.    The ALJ Did Not Err in Evaluating Plaintiff's Use of a Cane

Plaintiff contends that the ALJ failed to consider his need for a cane in developing his RFC. (Doc. No. 21 at 13.) Specifically, the ALJ erred in determining Plaintiff can perform light work because "[a]n individual who requires a can[e] for ambulation cannot perform the standing, walking, and lifting entailed in the performance of light work." (*Id.*) The Commissioner argues that the ALJ found that Plaintiff did not need a cane and this finding was supported by substantial evidence. (Doc. No. 22 at 8.)

Here, the ALJ found that, "[a]lthough [Plaintiff] alleged he requires the use of a cane, progress notes do not consistently show significant and persistent deficits in strength or other neurologic deficits that support the need to use a cane continually for all ambulation." AR 43. The ALJ cited to recent progress notes indicating that Plaintiff had a normal gait, including heel and toe walking, and full motor strength in all four extremities. *Id.*

In support of his argument, Plaintiff notes that he was given a cane in November 2012, and the following month Dr. Chen's progress notes include Plaintiff's report that the cane was helping. AR 371, 367. (Doc. No. 21 at 13.) The following year, consultative examiner Dr. Thomas noted that

16

Plaintiff had been using the cane for nine months. AR 389. (Doc. No. 21 at 13.) Plaintiff additionally argues that the ALJ ignored testimony and medical evidence indicating "limited use and pain in the [right] arm and shoulder, the only upper extremity not being used for ambulation with a cane." (Doc. No. 21 at 13.)[8]

However, the notations and subjective reports Plaintiff cites do not undermine the ALJ's finding that it was necessary for all ambulation. During a visit with Physicians Assistant Andres Bravo on November 26, 2012, Plaintiff requested and was provided a donated cane. AR 371. Although Plaintiff reported using a cane to Dr. Thomas on September 10, 2013, examination revealed no muscle atrophy and good standing balance. AR 390. On October 2, 2013, Plaintiff reported that medication was improving his pain and he occasionally could walk around without his cane. AR 440. On October 15, 2013, Plaintiff reported that his medication was helping his functioning and his activity had improved somewhat and his pain levels had decreased. AR 512. On November 12, 2013, progress notes indicated that Plaintiff's medication was helping his pain and he had been more active cleaning around the house and was out of bed more. AR 505. On December 2, 2014, Plaintiff reported that his medication helped him be active and spend time out of bed. AR 486. On January 29, 2015, Plaintiff reported his medication was controlling his pain sufficiently to allow him to ambulate and care for his own personal needs. AR 477. As the ALJ noted in his finding, the most recent progress notes dated March 5, 2015 showed Plaintiff had a normal gait, including heel and toe walking, and full motor strength in all four extremities. AR 604. There are no physicians' opinions, treatment notes, or other objective medical evidence in the record stating that Plaintiff required a cane for ambulation. Although Plaintiff testified that he needed a cane, the ALJ found Plaintiff's testimony to not be credible. AR 43. Additionally, the evidence Plaintiff identifies in support of his argument that the ALJ "ignored" relevant evidence is consistent with the evidence cited in the ALJ's opinion. See AR 41-44. Plaintiff does not cite to any evidence that the ALJ did not consider in reaching his decision.

---

[8]     Plaintiff also argues that the Appeals Council erred because it "ignored the evidence in Dr. McCarberg's RFC questionnaire" regarding his functional limitations. (Doc. No. 21 at 13.) However, as discussed above, the Court lacks jurisdiction to review the Appeals Council's decision and there is additionally nothing in the record or in Plaintiff's brief indicating that the Appeals Council ever received this evidence. See Brewes, 682 F.3d at 1161.

The Court accordingly finds that the ALJ's finding that Plaintiff did not need to use a cane to ambulate was supported by substantial evidence. Thus, the ALJ was not required to incorporate Plaintiff's use of a cane in the RFC.

### 4.     The ALJ Did Not Err in Evaluating the Side Effects of Plaintiff's Medications.

Plaintiff contends that the ALJ erred by failing to acknowledge and include the dosage, effectiveness, and side effects of his medications in his RFC finding. (Doc. No. 21 at 14.) However, according to the Commissioner, Plaintiff only argues that his medication "could" cause side effects and has not pointed to any evidence supporting this argument. (Doc. No. 22 at 11-12.)

Plaintiff testified that his pain medication makes it difficult to think. AR 75. Dr. McCarberg first prescribed Percocet to manage Plaintiff's pain on August 13, 2013. AR 523. Plaintiff initially reported that he experienced irritability, trouble sleeping, and constipation and "at first had mild behavioral side effects" causing him to take a half tab rather than a whole tab. AR 516, 520. However, on November 27, 2013, Plaintiff told Dr. Chen that he was doing "fairly well" with his current pain management medication. AR 505. On December 10, 2013, Plaintiff reported to Dr. McCarberg that he felt his "memory and cognitive deficit [was] recovering" with pain medication. AR 501. On March 18, 2014, and June 9, 2014, Plaintiff again reported to Dr. McCarberg that his "cognitive functioning" had improved. AR 493. Subsequent progress notes from Drs. Chen and McCarberg do not mention any reports of difficulty thinking or other side effects from Plaintiff's medication. AR 477-492.

The only evidence in the record that Plaintiff continued to experience side effects from his medication is his testimony that he had difficulty thinking. AR 75. Progress notes otherwise indicate that Plaintiff initially experienced some mild side effects that were resolved. Plaintiff's briefing does not describe any side effects he experiences from his medication or cite to any objective evidence in support of his argument. Instead, Plaintiff merely lists the medications he is on and contends that some are prescribed at high doses. (Doc. No. 21 at 13-14.)

When no objective evidence in the record suggests that a claimant's ability to work was hampered by his or her medications, an ALJ is not required to include a discussion of side effects in the hearing decision. *Atchison v. Astrue*, 2012 WL 3143871, at *12–13 (E.D. Cal. Aug. 1, 2012); *see also Greger v. Barnhart,* 464 F.3d 968, 973 (9th Cir. 2006) (finding that since the claimant had never

raised the issue of fatigue with his doctors, the ALJ properly limited his hypothetical questions to

medical assumptions with objective support in the record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217

(9th Cir. 2005) (holding that an ALJ is not required to prepare a function-by-function report for

medical conditions or impairments that the ALJ found neither credible nor supported by the

record); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (refusing to require the ALJ to address

the effect of claimant's narcotic use on his ability to work where the claimant had produced no

evidence showing that the narcotics so affected him); *Morillas v. Astrue*, 371 Fed.Appx. 880, 883 (9th

Cir. 2010) (finding that the ALJ reasonably discounted the claimant's testimony that

her medications made her drowsy where she had neither complained to her physicians of drowsiness

nor introduced evidence that her medications affected her functional ability). Because there is no

objective evidence confirming Plaintiff's subjective claim of difficulty thinking, the ALJ did not err in

failing to acknowledge and discuss the type, dosage, effectiveness, and side effects of Plaintiff's

medications.

### 5.    The ALJ Did Not Err in Evaluating Plaintiff's Subjective Complaints.

According to Plaintiff, the ALJ's reasons for discounting his credibility "were based on errors

of fact, selective review of the record, and . . . misrepresent[ed] the record." (Doc. No. 21 at 14-15.)

The Commissioner argues that the ALJ provided valid reasons, supported by substantial evidence, for

discounting Plaintiff's subjective complaints. (Doc. No. 22 at 9-12.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage

in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of

Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective

medical evidence of his impairment that could reasonably be expected to produce some degree of the

symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is

no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his

symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, but rejected his statements concerning the intensity,

persistence and limiting effects of those symptoms. AR 41. The ALJ did not find that Plaintiff was

1    malingering and was therefore required to provide specific, clear and convincing reasons for

2    discounting Plaintiff's testimony.

3        First, the ALJ discounted Plaintiff's statements based on the objective medical evidence. AR

4    41. Although lack of supporting medical evidence cannot form the sole basis for discounting

5    testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

6    2005). The ALJ linked Plaintiff's testimony that he found not to be credible to particular parts of the

7    record. The ALJ first summarized Plaintiff's testimony regarding the persistence, intensity, frequency,

8    and limiting effects of his pain. AR 41. The ALJ then detailed the specific medical evidence in the

9    record that did not support that testimony. AR 42-43. In light of the ALJ's extensive discussion and

10   comparison of the relevant testimony to the record, the Court is satisfied that the medical evidence in

11   the record was adequately considered. Thus, the Court finds no error with the ALJ's determination that

12   Plaintiff's testimony was inconsistent with the objective evidence and physical examinations.

13       The ALJ also discounted Plaintiff's testimony due to evidence in the record suggesting he had

14   exaggerated his symptoms and limitations. AR 43. The ALJ cited to Dr. Dunlap's assessment that

15   Plaintiff had a "myriad of complaints" but no objective findings of radiculopathy, including no

16   neurologic deficits. AR 43. Plaintiff argues this assessment is inaccurate in light of Dr. Khalid's May

17   21, 2015 testing. (Doc. No. 21 at 14.) However, Plaintiff did not provide Dr. Khalid's testing results to

18   the ALJ. Additionally, as discussed above, there is no indication this evidence was ever submitted to

19   the Appeals Council and Plaintiff did not establish that it was material and he had good cause for his

20   failure to do so.

21       The ALJ additionally cited to treatment notes from the UC San Diego Health System Pain

22   Clinic indicating Plaintiff had requested opioids, which he claimed to have previously avoided. AR 43.

23   However, a prescription database revealed he had three prescriptions for oxycodone in previous

24   months. *Id*. The ALJ's opinion states when Plaintiff was "confronted with this information, [Plaintiff]

25   raised his voice and demanded a prescription for opioids or a referral to a physician who would

26   prescribe them." AR 43. Plaintiff argues that this misconstrues the evidence because the relevant

27   treatment notes say nothing about "confronting" Plaintiff with this information or Plaintiff being

28   dishonest. (Doc. No. 21 at 14.) However, the treatment notes state that Plaintiff "demanded a

1  prescription for opioids, and when he was told that opioids were not indicated for his pain syndrome,

2  he raised his voice and demanded a 'referral' to a physician who would prescribe opioid medications."

3  AR 342. When Plaintiff was informed that the clinic could not to that, and the ultimate decision to

4  prescribe or not would be left to Plaintiff's primary care physician, Plaintiff left the clinic. *Id.*

5        The ALJ's assessment that Plaintiff was "dishonest" about his opioid medication was a

6  reasonable inference from the objective evidence stating Plaintiff claimed to have "avoided" opioids

7  while a prescription database revealed opioids had been recently prescribed, as well as the description

8  of Plaintiff's demands for opioids and his response to the clinic's refusal to provide them. While, as

9  Plaintiff notes, Dr. McCarberg subsequently determined opioid therapy to be appropriate, the ALJ's

10  finding remains supported by substantial evidence. Where "the evidence can reasonably support either

11  affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]." *Parra v.*

12  *Astrue,* 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted). It is not this Court's function to second

13  guess the ALJ and reevaluate the evidence. *See Gallardo v. Astrue*, 2008 WL 4183985 at *11 (E.D.

14  Cal. Sept. 10, 2008) ("The role of this Court is not to second guess the ALJ and reevaluate the

15  evidence, but rather it must determine whether the decision is supported by substantial evidence and

16  free of legal error."); *see also German v. Comm'r of Soc. Sec.,* 2011 WL 924737 at *11-12 (E.D. Cal.

17  Mar. 14, 2011) ("[i]t is not for this court to reevaluate the evidence"). The Court finds no error with

18  the ALJ's assessment of the evidence in finding that Plaintiff had been dishonest about his opioid

19  medication use.

20        The ALJ also discounted Plaintiff's subjective symptom testimony because he had received

21  treatment for his impairments that was essentially routine and/or conservative in nature. AR 43.

22  Evidence that a plaintiff responded positively to conservative treatment can undermine her claim of

23  disabling pain. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

24  ("Impairments that can be controlled effectively with medication are not disabling[.]").

25        The ALJ also noted that Plaintiff had stopped performing substantial gainful activity well

26  before his alleged onset date. AR 43. Plaintiff disputes this contention and argues that the ALJ ignored

27  evidence. (Doc. No. 21 at 14.) However, Plaintiff concedes that his impairments "started in 2009 and I

28  was partially disabled between 2009 and 2011." (*Id.*) As the ALJ noted, Plaintiff's earnings records

show that he last had substantial earnings in 2008, which is before 2009 when Plaintiff contends that his issues began and he became "partially disabled." *See* AR 43, 227-230; *see also* 20 C.F.R. § 404.1574(b).

In light of the foregoing, the Court concludes that the ALJ's interpretation of the evidence was reasonable and he made the requisite specific findings to reject Plaintiff's subjective symptom testimony.

**6.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence.**

Plaintiff argues that the ALJ and the Appeals Council erred by failing to give Drs. McCarberg, Ede, and Chen's assessments greater weight than the opinions of state agency physicians Drs. Masters and Lee and consultative examiner Dr. Thomas. (Doc. No. 21 at 14-17.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* The ALJ meets this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

As the ALJ noted in his decision, the record did not contain any opinions from treating physicians regarding Plaintiff's functional limitations. AR 43. Plaintiff only provided progress notes from Drs. McCarberg, Ede, and Chen, and the ALJ considered this evidence in determining Plaintiff's RFC. AR 42. However, those progress notes did not provide any assessment of the effects that Plaintiff's medical conditions had on his ability to work. *See* AR 345-387, 395-564. Because these medical records "did not contain any functional limitations, they were not probative as to what kind of work plaintiff could perform despite his impairments and, therefore, the ALJ was not required to

formally assess, or even discuss, them." *Arredondo v. Colvin*, 2016 WL 1162659, at *6 (E.D. Cal. Mar. 24, 2016) (citations omitted). This is because an ALJ can disregard a medical report that does "not show how [a claimaint's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (Medical records that "make only limited references to medically observed limitations on functional capacity…fall short of the substantial medical evidence required to establish a disability."); *Meanel*, 172 F.3d at 1113-14; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ did not err in failing to discuss or afford weight to medical reports that were not significant probative evidence).

While Drs. Ede and Chen's July 2015 letters contained some functional limitations, as previously discussed this evidence was not before the ALJ and was submitted to the Appeals Council after the ALJ's decision was rendered. For the same reasons discussed above, the Court does not have jurisdiction to review the Appeals Council's decision and the Appeals Council was not required to provide a detailed rationale or make any particularized evidentiary showing as to why it rejected a post hearing opinion. Moreover, the ALJ's decision remains supported by substantial evidence in light of Drs. Ede and Chen's July 2015 opinions.

Similarly, Plaintiff argues that the Appeals Council should have given great weight to Dr. McCarberg's June 30, 2016 RFC questionnaire and the May 21, 2015 testing performed by Dr. Khalid. (Doc. No. 21 at 16-17.) However, this evidence is dated after the ALJ's decision was issued and there is no indication it was ever submitted to the Appeals Council. As previously discussed, Plaintiff has not established that it is material and there was good cause for the failure to incorporate the evidence into the record in the prior administrative proceeding.

Finally, Plaintiff contends that the ALJ selectively analyzed the record in evaluating the medical evidence. (Doc. No. 21 at 15.) However, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation omitted). The Court disagrees with Plaintiff's argument that the ALJ did not consider the full record before arriving at a conclusion based on substantial evidence. The ALJ's decision recognizes that Plaintiff has some work limitations, however,

he discredits limitations that are inconsistent with the objective medical evidence. In reaching his decision, the ALJ weighed the relevant evidence in the record and did not impermissibly give more weight to evidence which supported his conclusion over equally relevant evidence. Having reviewed the record, the Court concludes that the ALJ's interpretation of Plaintiff's medical records was reasonable and supported by substantial evidence.

### 7.   Plaintiff Has Not Established that the Commissioner Acted in Bad Faith

Plaintiff's seventh, eighth, tenth, and eleventh arguments in his brief appear to address various alleged acts of "bad faith." (Doc. No. 21 at 17-21.) However, these allegations do not warrant remand.

Plaintiff first contends that the Commissioner "lost [his] first case" submitted on March 8, 2012. (Doc. No. 21 at 17.) Plaintiff therefore requests that the Court consider March 8, 2012 as his original filing date, and September 1, 2011 as the date he became fully disabled. (*Id.*) The date an application was filed determines amount of benefits awarded. *See Wellington v. Berryhill,* 878 F.3d 867, 872 (9th Cir. 2017) ("A claimant can qualify for SSDI only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed. [Citation.] In contrast, a claimant is eligible for SSI once she becomes disabled, but she cannot receive benefits for any period before her application date.") As the Court affirms the ALJ's decision for the reasons discussed herein, this request is denied as moot.

Plaintiff further argues that the Appeals Council " 'lost', ignored, or intentionally deleted material evidence . . . and there is strong evidence that this was intentional." (Doc. No. 21 at 17-18.) Specifically, Plaintiff points to his former attorneys' representative brief submitted to the Appeals Council in support of Plaintiff's request for reconsideration of the ALJ's decision. (*Id.*) Plaintiff contends that this document was thirteen pages long but only six pages were included in the record. (*Id.*) *See* AR 289-293. The representative brief Plaintiff refers to in his argument contains a fax header numbered pages eight through twelve of thirteen. *See* AR 289-293. An identical fax header marking page thirteen of thirteen can be found at page 608 of the administrative record. *See* AR 608. This document consists of Drs. Ede and Chen's July 2015 letters. *Id.* Additionally, pages one through seven of thirteen, consisting of communications between Plaintiff's former counsel and the Appeals Council, are found at pages 28 through 34 of the administrative record. *See* AR 28-34. Therefore, there does not

1   appear to be any merit to Plaintiff's contention that the Appeals Council "lost, ignored, or intentionally

2   deleted" the representative brief.

3        Plaintiff additionally contends that the Commissioner of "suppress[ed]" portions of his former

4   attorneys' representative brief. (Doc. No. 21 at 18, 19.) Plaintiff points to the fact that two pages of the

5   brief appear on a single page in the record, in smaller font, with a portion of the argument apparently

6   missing. (*Id.*) However, the fax headers are numbered consecutively, without any missing pagination,

7   and Plaintiff has not established that the pagination and font sizing discrepancy was due to

8   malfeasance rather than a faxing error or some other cause. Moreover, these discrepancies are

9   immaterial because the representative brief is not evidence on which the ALJ relied and the Court has

10  no jurisdiction to review the Appeals Council's decision or its reasons for rejecting Plaintiff's former

11  attorneys' arguments. *Berschneider*, 2015 WL 1497835, at *9 ("[T]he Court cannot remand base

12  dsolely on the actions of the Appeals Council[.]").

13       Plaintiff next accuses the ALJ of bias, citing to the ALJ's selective analysis of the evidence and

14  "curt and adversarial tone" at the hearing. (Doc. No. 21 at 18.) To demonstrate bias, Plaintiff must

15  show that "the ALJ's behavior in the context of the whole case was 'so extreme as to display clear

16  inability to render fair judgment.'" *Bayliss v. Barnhart,* 427 F.3d 1211, 1214-15 (9th Cir. 2005)

17  (citations omitted). The Court begins with the presumption that the ALJ was unbiased. *Id.* Plaintiff

18  may rebut this presumption by showing "a conflict of interest or some other specific reason for

19  disqualification." *Id.*

20       Plaintiff has not made the requisite showing that the ALJ was biased. For the same reasons

21  discussed above, the Court is not persuaded by Plaintiff's argument that the ALJ selectively analyzed

22  the evidence. In reaching his decision, the ALJ weighed the relevant evidence in the record and did not

23  impermissibly give more weight to evidence which supported his conclusion over equally relevant

24  evidence. Additionally, a "curt and adversarial tone" is insufficient to establish bias. Here, the ALJ

25  prepared a detailed opinion in which he carefully examined Plaintiff's medical history and addressed

26  the relevant evidence, including the opinions of each reviewing doctor. Allegations of bias should be

27  rejected where isolated portions of an ALJ's conduct are challenged but the record as a whole shows

28  fundamental fairness for the litigations. *Bayliss*, 427 F.3d at 1215-16. Such is the case here. In light of

1   the detailed and well-reasoned written grounds for ruling against Plaintiff, the Court finds that Plaintiff

2   has failed to establish any bias.

3          Additionally, Plaintiff challenges the ALJ's failure to address "the extensive and specific

4   evidence of my fibromyalgia submitted by Dr. Silvia Diego, MD." (Doc. No. 21 at 18-21.) Dr.

5   Diego's opinion is not part of the record for this case. Instead, Plaintiff indicates that this evidence was

6   submitted in support of a subsequent application for benefits. (*See id.*) Indeed, Dr. Diego's report

7   states that she has "reviewed the ALJ's decision rendered October 9, 2108 [sic]" and "[t]here a [sic]

8   some conclusions made by the ALJ that are inconsistent with my findings and review of the medical

9   records that predate our treatment relationship." (Doc. No. 21 at Ex. 3A). However, Plaintiff's

10  subsequent application for benefits is not before the Court. *See Hastings v. Comm'r of Soc. Sec.,* 581

11  Fed.Appx. 694, 695 (9th Cir. July 1, 2014) (holding that district court lacked jurisdiction over

12  a subsequent grant of benefits).

13         As discussed above, Plaintiff is required to show that new evidence submitted to the trial court

14  is material and there was good cause for the failure to incorporate the evidence into the record in the

15  prior proceeding. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). Dr.

16  Diego's report states that she began treating Plaintiff in 2016, after the ALJ's decision in this case was

17  issued. Treatment records documenting a claimant's condition after the ALJ's decision are, at most,

18  material to a new application for disability, but cannot be used as a basis to remand this case to the

19  ALJ. *Arnold v. Comm'r of Soc. Sec.,* 2014 WL 1303674, at *12 (E.D. Cal. Mar. 31, 2014) (citing

20  *Sanchez v. Sec'y of Health & Human Servs.,* 812 F.2d 509, 512 (9th Cir. 1987)). Furthermore, Plaintiff

21  makes no effort to address good cause for his failure to submit this evidence during the administrative

22  proceedings. Accordingly, Dr. Diego's report is not properly before the Court and has not been

23  considered.

24         Further, Plaintiff states that "Dr. McCarberg performed examinations confirming the presence

25  of 12/18 tender points . . . but these exam records were erased from the record[.]" (Doc. No. 21 at 19.)

26  Plaintiff does not identify when this examination was performed or provide a copy of any pertinent

27  medical records. Furthermore, the ALJ specifically cited to multiple progress notes where Dr.

28  McCarberg noted tender points, including progress notes dated March 18, 2014, noting "12/18 tender

points." AR 42, 487, 490, 494, 498. These progress notes are not only included in the record, but the ALJ also expressly considered them in developing the RFC. AR 42. Accordingly, Plaintiff has not established that any medical evidence was "erased from the record."[9]

Plaintiff additionally contends that the Appeals Council failed to notify him of an extension to file this action. (Doc. No. 21 at 20-21.) According to the record, Plaintiff sought review of the ALJ's decision and submitted new evidence, which the Appeals Council denied on November 17, 2016. AR 21-26. On January 19, 2017, Plaintiff requested an extension of time to file a civil action, which the Appeals Council granted on April 27, 2017. AR 16-17. On October 24, 2017, Plaintiff requested that his claim be reopened because Plaintiff had not received notification that his original request for review had been denied. AR 6. Plaintiff requested permission to submit additional statements or an extension of thirty (30) days to file a civil action. AR 6. On December 29, 2017, Plaintiff requested a new extension of time to file a civil action because Plaintiff had not received the Appeals Council's April 27, 2017 letter. AR 4. On May 24, 2018, the Appeals Council declined to reopen Plaintiff's claims and granted a further extension of time for Plaintiff to file a civil action. AR 12-13. As discussed above, the Court lacks jurisdiction to review the Appeals Council's decisions and cannot remand based solely on its actions. *See Brewes*, 682 F.3d at 1161; *Berschneider*, 2015 WL 1497835, at *9. Moreover, any error in granting Plaintiff an extension is harmless because, as Plaintiff acknowledges, the Appeals Council rectified the matter and gave Plaintiff an additional extension of time to file this action. (*See* Doc. No. 21 at 20-21.)

Finally, Plaintiff disagrees with the Appeals Council's decisions declining to reverse the ALJ's decision or reopen the case. (Doc. No. 21 at 21.) According to Plaintiff, he submitted evidence that met the Appeals Council's criteria for submission of new evidence and the ALJ's decision should have been reversed. However, once again, the Court lacks jurisdiction to review the Appeals Council's

---

[9]    It is unclear from the briefing whether Plaintiff argues that the ALJ erred in failing to discuss Plaintiff's diagnoses of fibromyalgia and myofascial pain syndrome or whether he merely challenges the allegation that evidence was "erased from the record." To the extent Plaintiff intends to raise this argument, the Court finds it is without merit. Plaintiff fails to identify any limitations that the ALJ did not address related to these diagnoses, nor does the record reveal any additional limitations that the ALJ should have addressed. Thus, any error by not specifically addressing these diagnoses would be harmless. *Morris v. Comm'r of Soc. Sec.*, 2017 WL 4181083, at *6; *see also Matthews*, 10 F.3d at 680 ("The mere existence of an impairment is insufficient proof of disability.").

decisions and cannot remand based solely on its actions. *See Brewes*, 682 F.3d at 1161; *Berschneider*, 2015 WL 1497835, at *9. The Appeals Council's determinations of Plaintiff's requests for review and to reopen his case are non-final agency actions that are not subject to judicial review. *Taylor cv. Comm'r. Soc. Sec.,* 659 F.3d 1228, 1231 (9th Cir. 2011).

Accordingly, the Court finds that Plaintiff's allegations regarding the Commissioner's "bad faith" conduct and the Appeal's Council's decisions do not warrant remand.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Glenn Schuler.

IT IS SO ORDERED.

Dated:   **May 27, 2020**              /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE